No. 22-1252

# United States Court of Appeals
## for the
## Tenth Circuit

---

GARY WAETZIG,
*Plaintiff-Appellee,*

v.

HALLIBURTON ENERGY SERVICES, INC.,
*Defendant-Appellant*

---

Appeal from the United States District Court, District of Colorado
Case No. 1:20-cv-00423 (Hon. Kristin L. Mix)

---

## APPELLEE'S SUPPLEMENTAL BRIEF

---

Austin M. Cohen
Spencer J. Kontnik
KONTNIK | COHEN, LLC
201 Steele Street, Suite 210
Denver, CO 80206
Tel.: (720) 449-8448
acohen@kontnikcohen.com

Vincent Levy
Kevin D. Benish
Jack L. Millman
Patrick J. Woods
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, NY 10017
Tel.: (646) 837-5151
kbenish@hsgllp.com

*Attorneys for Plaintiff-Appellee
Gary Waetzig*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

ARGUMENT ................................................................................................... 1

I.   The District Court Did Not Abuse Its Discretion In Granting Rule 60(b) Relief.......... 1

II.  Three Independent Bases Of Jurisdiction Over The Motion To Vacate Exist ............. 3

    A.  Ancillary Jurisdiction Based On Plaintiff's Reopened Federal Case...................... 3

    B.  Diversity Jurisdiction Based On The Motion To Vacate ......................................... 7

    C.  Federal Question Jurisdiction Based On "Manifest Disregard"............................... 9

III. Vacatur Of The Arbitration Award Was Proper............................................................ 10

CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Arias v. Shinn*,
   2022 WL 464910 (D. Ariz. Jan. 19, 2022) ...................................................... 3

*Badgerow v. Walters*,
   596 U.S. 1 (2022) .................................................................................... 2–6, 9

*Bowles v. Russell*,
   551 U.S. 205 (2007) ..................................................................................... 2

*Cashner v. Freedom Stores*,
   98 F.3d 572 (10th Cir. 1996) ......................................................................... 2

*Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*,
   125 F.4th 1000 (10th Cir. 2025) ..................................................................... 7

*Daneshvar v. Graphic Tech., Inc.*,
   237 F. App'x 309 (10th Cir. 2007) ................................................................ 7

*Days Inns Worldwide, Inc. v. Patel*,
   445 F.3d 899 (6th Cir. 2006) ......................................................................... 3

*Doscher v. Sea Port Grp. Sec., LLC*,
   832 F.3d 372 (2d Cir. 2016) .......................................................................... 9

*Friedler v. Stifel, Nicolaus, & Co., Inc.*,
   108 F.4th 241 (4th Cir. 2024) ........................................................................ 9

*George v. Rushmore Service Center, LLC*,
   114 F.4th 226 (3d Cir. 2024) ......................................................................... 4

*Hunt v. Washington State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) ..................................................................................... 8

*Johnson v. Spencer*,
   950 F.3d 680 (10th Cir. 2020) ....................................................................... 1

*Kinsella v. Baker Hughes Oilfield Operations, LLC*,
66 F.4th 1099 (7th Cir. 2023) ............................................................. 3–6

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) ............................................................................. 5

*Lovell v. State Farm Mut. Auto. Ins. Co.*,
466 F.3d 893 (10th Cir. 2006) ............................................................. 8

*Marine Transit Corp. v. Dreyfus*,
284 U.S. 263 (1932) ......................................................................... 4, 6

*Pelican Prod. Corp. v. Marino*,
893 F.2d 1143 (10th Cir. 1990) ........................................................... 1

*Phelps Oil & Gas, LLC v. Noble Energy Inc.*,
5 F.4th 1122 (10th Cir. 2021) ............................................................. 8

*Roma Mikha, Inc. v. Southern Glazer's Wine & Spirits, LLC*,
2024 WL 5372754 (C.D. Cal. Nov. 21, 2024) ..................................... 4

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ............................................................................... 7

*Rubash v. Volkswagen Grp. of Am., Inc.*,
2023 WL 5424098 (W.D. Wis. Aug 18, 2023) ..................................... 5

*SmartSky Networks, LLC v. DAG Wireless, LTD.*,
93 F.4th 175 (4th Cir. 2024) ............................................................... 6

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ............................................................................. 4

*Sorbo v. United Parcel Serv.*,
432 F.3d 1169 (10th Cir. 2005) ........................................................... 3

*Teleport Mobility, Inc. v. Sywula*,
2025 WL 860498 (N.D. Cal. Mar. 18, 2025) .................................... 4, 6

*Tesla Motors, Inc. v. Balan*,
2025 WL 1096931 (9th Cir. Apr. 14, 2025) ........................................ 8

*Waetzig v. Halliburton Energy Servs., Inc.*,
　145 S. Ct. 690 (2025) .................................................................................. 1

*Waetzig v. Halliburton Energy Servs., Inc.*,
　82 F.4th 918 (10th Cir. 2023) ..................................................................... 10

*Waetzig v. Halliburton Energy Servs., Inc.*,
　2022 WL 3153909 (D. Colo. Aug. 3, 2022) ................................................ 10

*Zynex Med., Inc. v. Coyote Stone, LLC*,
　2024 WL 4829371 (D. Colo. Oct. 16, 2024) ................................................ 9

**Statutes**

28 U.S.C. § 1331 .........................................................................................4, 9

28 U.S.C. § 1332 .........................................................................................8, 9

28 U.S.C. § 1653 ...........................................................................................7

**Other Authorities**

14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3707
　(5th ed. 2023) ............................................................................................. 7

**Rules**

Fed. R. Civ. P. 60(b) .............................................................................1–3, 10

## INTRODUCTION

In *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690 (2025), the Supreme Court held that the district court had the power to entertain Plaintiff's Rule 60(b) motion. It remains for this Court to determine (1) whether the district court properly exercised its discretion in granting Plaintiff's Rule 60(b) motion; (2) whether the district court had jurisdiction over Plaintiff's motion to vacate; and (3) whether the district court properly exercised its discretion in vacating the arbitration award.

Because the district court properly exercised its discretion, and because there are multiple bases of jurisdiction over the motion to vacate, the Court should affirm the district court's decision to reopen Plaintiff's case, hold that the district court had jurisdiction over Plaintiff's motion to vacate, and affirm and remand.

## ARGUMENT

## I.    The District Court Did Not Abuse Its Discretion In Granting Rule 60(b) Relief

"Abuse of discretion is defined in this circuit as a judicial action which is arbitrary, capricious, or whimsical." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). Accordingly, a decision on a Rule 60(b) motion "will be reversed only if [the court] find[s] a *complete absence* of a reasonable basis and [is] *certain* that the decision is wrong." *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (emphases added; citation omitted).

The district court below acted well within its discretion in granting Plaintiff's Rule 60(b) motion. Far from providing a "complete absence of a reasonable basis," the district court analyzed Plaintiff's rationales for reopening his case, and properly concluded that relief was appropriate, citing Rule 60(b)(6), and explaining that without relief Mr. Waetzig

would "effectively[] be deprived of a remedy in connection with his petition to vacate the arbitration award." App'x 248. The court emphasized that Mr. Waetzig could not have contemplated the effect of his voluntary dismissal at the time he entered it. App'x 246–48. It explained that *after* Mr. Waetzig dismissed his case, the Supreme Court's decision in *Badgerow v. Walters*, 596 U.S. 1 (2022) prevented Mr. Waetzig from seeking to vacate the arbitration award in federal court on the basis that the Federal Arbitration Act conferred subject-matter jurisdiction. *Id.* at 11–12.

The foregoing amply supports the district court's exercise of discretion. This Circuit has "found such extraordinary circumstances to exist when, after entry of judgment, events not contemplated by the moving party render enforcement of the judgment inequitable." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996). As the district court below noted, "that is precisely the situation here." App'x 246. There was thus a "reasonable basis" for Rule 60(b)(6) relief. *Johnson*, 950 F.3d at 701.

The district court also properly exercised its discretion under Rule 60(b)(1), which allows courts to reopen cases for "mistake, inadvertence, [] or excusable neglect." The court reasoned that relief was appropriate under Rule 60(b)(1) because "Plaintiff appears to have made a careless mistake when he dismissed the action pursuant to [Rule] 41(a)(1)(A)(i) without moving to stay or administratively close the case." App'x 245.

Halliburton's arguments that Plaintiff's Rule 60(b) motion was untimely are wrong. For starters, Halliburton waived any argument that the Rule 60(b)(1) motion was untimely by not raising it before the district court. It cannot rely on that argument now. *See Bowles v. Russell*, 551 U.S. 205, 210–12 (2007) (a "rule-based time limit" is subject to waiver);

*Arias v. Shinn*, 2022 WL 464910, at *2 (D. Ariz. Jan. 19, 2022) ("[T]he one-year time limit applied to Rule 60(b)(3) is a non-jurisdictional claim processing rule that may be waived in certain circumstances."). In any event, the Rule 60(b)(6) motion was timely. Whether a motion is filed within a "reasonable time" under Rule 60(b)(6) "depends on the facts of each case." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006). Here, Plaintiff filed his motion to reopen and vacate the arbitral award just over three months after the award issued, and filed his brief in response to the district court's order to show cause within fourteen days. Given that the arbitral award is what necessitated Plaintiff's motion to reopen, his motion was filed within a reasonable time. *Cf. Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005) (denying Rule 60 motion when plaintiff had not offered "*any* justification for the delay").

## II.    Three Independent Bases Of Jurisdiction Over The Motion To Vacate Exist

### A.    Ancillary Jurisdiction Based On Plaintiff's Reopened Federal Case

The district court had ancillary jurisdiction to vacate the arbitral award because it reopened Petitioner's action suing Halliburton for wrongful termination in violation of the Age Discrimination in Employment Act. As the Seventh Circuit explained, where "the underlying [legal] claim arises under federal law, and [where a party] originally filed the claim in district court, federal jurisdiction continues over his FAA Section 10 motion to vacate." *Kinsella v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1103 (7th Cir. 2023). This is because the underlying action may act "as a jurisdictional anchor" that permits courts to "retain jurisdiction over related FAA motions." *Badgerow v. Walters*, 596 U.S. 1, 26 (2022) (Breyer, J., dissenting).

This view of ancillary jurisdiction is consistent with established precedent. Going back to 1932, the Supreme Court has explained that "[w]e do not conceive it to be open to question that, where the court has authority under the statute, as we find that it had in this case, to make an order for arbitration, *the court also has authority to confirm the award or to set it aside for irregularity, fraud, ultra vires, or other defect*." *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76 (1932) (emphasis added). The principle that federal courts have ancillary jurisdiction over motions under the FAA where they have jurisdiction over the underlying dispute is consistent with the view that "staying rather than dismissing a suit [while awaiting the outcome of arbitral proceedings] comports with the supervisory role that the FAA envisions for the courts." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

While the Court in *Badgerow* did not expressly address the jurisdictional-anchor issue, *Badgerow* was addressing a case where "a party brings a separate, standalone case in order to confirm an arbitration award," as opposed to a case where an "underlying dispute" existed. *See Roma Mikha, Inc. v. Southern Glazer's Wine & Spirits, LLC*, 2024 WL 5372754, at *3 (C.D. Cal. Nov. 21, 2024) (holding ancillary jurisdiction exists in the latter type of case). Thus, post-*Badgerow,* courts repeatedly endorse the jurisdictional-anchor approach, including the Third and Seventh Circuits. *See, e.g.*, *Kinsella*, 66 F.4th at 1103; *George v. Rushmore Service Center, LLC*, 114 F.4th 226, 238 n.16 (3d Cir. 2024) ("Of course, if a district court has an independent jurisdictional basis, such as 28 U.S.C. § 1331, to hear a suit, that court's jurisdiction 'continues over' both a motion to compel and a subsequent motion to vacate."); *see also Teleport Mobility, Inc. v. Sywula*, 2025 WL 860498, at *5–6 (N.D. Cal. Mar. 18, 2025) ("declin[ing] to extend *Badgerow*'s holding to

4

the circumstances here" and finding jurisdiction due to underlying federal case); *Rubash v. Volkswagen Grp. of Am., Inc.*, 2023 WL 5424098, at *1 (W.D. Wis. Aug 18, 2023) ("[J]urisdiction continues over [the party's] motion to confirm.").

And the anchor test finds further support in *Kokkonen*, on which *Badgerow* heavily relied. *Kokkonen* concerned federal jurisdiction to enforce the settlement of a federal case after its dismissal, a situation that *Badgerow* likened to petitions to vacate or enforce arbitral awards. *See Badgerow*, 596 U.S. at 8–9, 18 (discussing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)). Importantly, when *Kokkonen* ruled that jurisdiction to enforce a settlement would be lost upon dismissal of the case, the Supreme Court emphasized that "[i]f the parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so" by stipulating to "the court's 'retention of jurisdiction' over the settlement contract." 511 U.S. at 381.

Waetzig satisfies the jurisdictional-anchor test. Like in *Kinsella*, "the underlying [legal] claim arises under federal law" and Waetzig "originally filed the claim in district court," so "federal jurisdiction continue[d] over his FAA Section 10 motion to vacate." 66 F.4th at 1103. There is no dispute Waetzig's original claim arises under federal law (the ADEA), and the district court correctly reopened the case, *see supra* Part I.

Halliburton may raise some objections, but they would all lack merit. The fact the district court reopened the underlying case instead of staying it pending the arbitration does not change the analysis, because what matters is that the motion to vacate is brought in connection with an open federal-question case. *See Kinsella*, 66 F.4th at 1103 (explaining how "the district court's dismissal without prejudice with leave to reinstate was in effect a

stay, so it did not deprive the district court of jurisdiction to rule on the motion to vacate"). Similarly, the district court need not have adjudicated a motion to compel to exercise ancillary jurisdiction; instead, what matters is that the district court could have adjudicated such a motion and that the case remains open at the time the motion to vacate is brought. *See Marine Transit*, 284 U.S. at 275–76; *Kinsella*, 66 F.4th at 1102–03 (exercising jurisdiction over case where "parties' [submitted a] joint motion to stay the case pending arbitration"). Indeed, a contrary rule would disincentivize voluntary stays in favor of motion to compel practice, without any legal basis to do so.

Finally, Halliburton alludes to a recent Fourth Circuit decision rejecting the jurisdictional-anchor theory. Dkt. 91 at 10; *SmartSky Networks, LLC v. DAG Wireless, LTD.*, 93 F.4th 175, 183–84 (4th Cir. 2024). But that decision rests entirely on the mistaken view that "*Badgerow* does not leave open the question of whether there is a distinction between freestanding applications and those filed after arbitration in a previously stayed action." 93 F.4th at 184. The Supreme Court said no such thing in *Badgerow*, and indeed it did not engage with Justice Breyer on the jurisdictional-anchor issue,[1] as numerous other courts have recognized. *See, e.g.*, *Teleport Mobility*, 2025 WL 860498, at *5 (discussing "the absence of Supreme Court guidance"). Indeed, *Badgerow* neither purported to overrule *Marine Transit* or even discussed that case, because the scenario in *Badgerow* (a freestanding application) differed from the scenario here (an underlying case).

---

[1] Nor could it have done: *Badgerow* involved a freestanding vacatur action that was first initiated in state court.

6

**B.    Diversity Jurisdiction Based On The Motion To Vacate**

Plaintiff requests to amend his pleadings via 28 U.S.C. § 1653 before this Court to make clear that his motion to vacate presents an amount in controversy ("AIC") that exceeds $75,000, which will give rise to diversity jurisdiction over Plaintiff's motion. Plaintiff's request to amend should be granted by this Court. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025) ("[A] case falling outside the federal court's jurisdiction can come within it by virtue of an amendment [pursuant to § 1653]."); *Daneshvar v. Graphic Tech., Inc.*, 237 F. App'x 309, 314 (10th Cir. 2007) (unpublished) ("[Section 1653] permits consideration of materials concerning defective jurisdictional allegations that are presented for the first time on appeal.").[2] Halliburton wrongly contends this argument has been waived, relying on inapposite Tenth Circuit authority that addressed waiver of a basis for *appellate* jurisdiction. *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275–76 (10th Cir. 2011). Its citations to Supreme Court cases fare no better, as those cases do not address § 1653 as a vehicle for amendment. *See* Dkt. 91 at 7.

In pleading diversity jurisdiction, "the amount for jurisdiction purposes is measured by the direct pecuniary value of the right the plaintiff seeks to enforce or protect." Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3707 (5th ed.) (collecting cases). As this court has recognized in other cases where the AIC is measured by something other than the

---

[2] While this Court can and should permit Plaintiff to amend his pleadings to show that the value of the motion to vacate exceeds the requisite AIC, the proper course of action if it is not prepared to do so is to order a limited remand for additional factfinding on the issue. *Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1009–10 n.7 (10th Cir. 2025) ("[W]e have remanded when there is a dispute or a potential dispute that requires jurisdictional fact finding.").

amount of compensatory damages sought, AIC "is measured by the value of the object of the litigation." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). AIC is measured based on the *plaintiff's* valuation of that object, or its cost from the defendant's point of view. *Id.* at 898; *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (discussing and applying "either viewpoint" rule).

Here, the "object" of Plaintiff's motion is the vacatur of the arbitration award that dismissed his damages claim. His motion to vacate is the only procedural vehicle through which Plaintiff may "protect" his underlying ADEA claim, lest it be lost due to the arbitrator's decision—which the district court found to be unlawful. Looking only to the precise dispute before the Court—*i.e.*, the motion to vacate—it is clear that the value that Plaintiff is trying to protect exceeds $75,000 and thus satisfies § 1332. If permitted to supplement the jurisdictional record as he should be, Plaintiff will show that the value of his motion well exceeds $75,000, given that his base 2012 annual salary exceeded $140,000. Ex. A.[3] That means his motion to vacate is worth more than that amount as well, because Plaintiff's successful motion will enable him to reinstate a claim valued at far more than the minimum jurisdictional amount required.[4] This brings Plaintiff's motion to vacate

---

[3] Plaintiff contacted Halliburton to determine whether they agreed that the present dispute exceeds $75,000 and thus satisfies § 1332's amount in controversy requirement. On April 18, 2025, Halliburton responded by stating that it "opposes any amendment of the complaint," but did not state its view on the value of the motion to vacate. Ex. B.

[4] *Tesla Motors, Inc. v. Balan*, 2025 WL 1096931 (9th Cir. Apr. 14, 2025), does not counsel a different result. There, appellees tried to "*confirm* a zero-dollar award," *id.* at *3 (emphasis added), and the Ninth Circuit rejected that attempt. But Plaintiff here seeks to

within § 1332, since "it must appear to a legal certainty that the claim is really *for less* than the jurisdictional amount to justify dismissal." *Zynex Med., Inc. v. Coyote Stone, LLC*, 2024 WL 4829371, at *2 (D. Colo. Oct. 16, 2024) (emphasis added; exercising diversity jurisdiction over subpoena in aid of arbitration).

### C.    Federal Question Jurisdiction Based On "Manifest Disregard"

"Manifest disregard" is a federal common law doctrine that provides a standalone basis for vacating an arbitration award that decided questions of federal law, and thus gives rise to jurisdiction under 28 U.S.C. § 1331. Although this Circuit has not squarely decided the issue, the Second Circuit has observed that "federal-question jurisdiction lies on the face of [a] petition" where "the petitioner complains principally and in good faith that [an] award was rendered in manifest disregard of federal law." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 375 (2d Cir. 2016) (citation omitted), *abrogated on other grounds by Badgerow*. Plaintiff here made a good-faith showing that the arbitrator manifestly disregarded federal law, Dkt. 23 at 28–30, which establishes subject-matter jurisdiction over the motion to vacate. *See Doscher*, 832 F.3d at 375 (considering manifest disregard claim); *Luong v. Cir. City Stores, Inc.*, 368 F.3d 1109, 1112, (9th Cir. 2004) (same).[5]

---

*vacate* the award against him so he can pursue claims worth more than $75,000. Thus, unlike the *Tesla Motors* petition, Plaintiff's motion to vacate has real value to Plaintiff.

[5] *But see Friedler v. Stifel, Nicolaus, & Co., Inc.*, 108 F.4th 241, 247 (4th Cir. 2024) ("[A] claim of manifest disregard of federal law doesn't present a federal question.").

## III.     Vacatur Of The Arbitration Award Was Proper

Finally, the district court's order should be affirmed because the district court did not abuse its discretion by vacating the arbitral award. Plaintiff briefed this issue at length in his main brief. *See* Dkt. 23 at 6–7, 37–40. As noted in that submission, among other things, the arbitrator exceeded her powers under 9 U.S.C. § 10(a)(4), and subjected Plaintiff to prejudice justifying vacatur under 9 U.S.C. §10(a)(3). Dkt. 23 at 6–7. It was well within the district court's discretion to make those findings. Indeed, it is rare to find an arbitral award so patently suited to vacatur, where the parties' agreement and the relevant arbitration rules required the arbitrator to give at least some written explanation for her award, and it is undisputed that she gave none. *Waetzig v. Halliburton Energy Servs., Inc.*, 2022 WL 3153909, at *6 (D. Colo. Aug. 3, 2022). For these reasons, the district court's order on Plaintiff's motion to vacate should be affirmed. *Cf. Waetzig v. Halliburton Energy Servs., Inc.*, 82 F.4th 918, 930 n.7 (10th Cir. 2023) (Matheson, J., dissenting) ("I would also affirm the district court's grant of the motion to vacate under Rule 60(b)(6).")

## CONCLUSION

This Court should affirm the district court's decision to reopen Plaintiff's case, hold that the district court had jurisdiction over Plaintiff's motion to vacate, affirm the district court's order vacating the arbitration award, and remand for further proceedings. To the extent the Court has additional questions, Plaintiff would welcome the opportunity to provide further briefing or conduct oral argument on the issues addressed here.

Dated: April 21, 2025

    Respectfully submitted:

/s/ *Austin M. Cohen*                             /s/ *Kevin D. Benish*

Austin M. Cohen                                     Vincent Levy

Spencer J. Kontnik                               Kevin D. Benish

KONTNIK | COHEN, LLC                   Jack L. Millman

201 Steele Street, Suite 210                Patrick J. Woods

Denver, CO 80206                       HOLWELL SHUSTER & GOLDBERG

Tel.: (720) 449-8448                       LLP

acohen@kontnikcohen.com           425 Lexington Avenue, 14th Floor

New York, NY 10017

Tel.: (646) 837-5151

kbenish@hsgllp.com

*Attorneys for Plaintiff-Appellee*
*Gary Waetzig*

## CERTIFICATE OF COMPLIANCE

This supplemental brief complies with the page limit set by order of the Court, as it contains no more than 10 pages, excluding the portions exempted by Fed. R. App. P. 32(f).

This supplemental brief also complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6), because it has been prepared in proportionally spaced typeface using Microsoft Word in 13-point, Times New Roman font. This formatting is also consistent with the Court's order.

*/s/    Austin Cohen*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2025, I caused this document to be filed through the ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/      Austin Cohen*

# EXHIBIT A

# **HALLIBURTON**

August 1, 2012

Gary Waetzig, 00517690
Gillette, WY

Dear Gary,

It is my pleasure to confirm the following compensation and benefits details regarding your employment to join Halliburton Energy Services, Inc. as R453-ESG-Country/Area - PSL Ops Mgr for our Multi-Chem product service line. All compensation and benefits elements identified herein will be effective January 1, 2013 with the transition onto Halliburton payroll.

Specific elements include:

- Your base salary will be $11,916.67 USD per month to be paid on a semi-monthly basis effective January 1, 2013.

- You will continue to participate in Multi-Chem's quarterly bonus plan for calendar year 2013. As we continue to transition to Halliburton bonus plans, additional information will be forthcoming.

- You will have the opportunity to participate in the U.S. Annual Benefits Enrollment process beginning mid October for the Company's Group Benefits, which includes medical, dental, and vision, accidental death and dismemberment, long-term disability, and employee, spouse and child life insurance. Coverage is effective January 1, 2013, provided you complete the enrollment process during the allotted time allowed for all U.S. employees. Detailed information about the benefits will be provided prior to the enrollment process.

- If applicable, you will continue to participate in the Halliburton Retirement and Savings Plan (the "R&S Plan"). You are allowed to contribute between 1% and 50% of your eligible pay each pay period on a tax-deferred basis subject to IRS limitations. Halliburton will match one dollar for each dollar you contribute, up to 4% of your eligible pay each pay period, and will also match 50 cents for each dollar you contribute that is between 4% and 6% of your eligible pay per pay period. You will become 100% vested in the company matching contributions after two (2) years of vesting service with the company. Your service with Multi-Chem will count towards your vesting service in the R&S Plan.

- Eligibility to participate in the Employee Stock Purchase Program (ESPP) provided that you are employed by a participating company (based on your payroll location) at least 20 hours per week and five or more months in any calendar year, you are not paid in a foreign country whose laws or regulations effectively prohibit participation and the number of shares you own (or would own, in the aggregate, as a result of your participation in the ESPP), does not equal or exceed 5% of the outstanding Halliburton

Appellate Case: 22-1252    Document: 93-2    Date Filed: 04/21/2025    Page: 20

common stock.  Your first opportunity to enroll in the ESPP will be Dec 1 – 15, 2012 for the Jan – Jun 2013 Purchase Period.  Enrollment for the ESPP occurs twice each year in the month proceeding the first day of the Purchase Period.   You will be provided additional information prior to the January enrollment cycle in December.

You will be required to sign and return the following:
1. Intellectual Property and Confidentiality Information Agreement
2. Halliburton Dispute Resolution Program Employment Agreement

Your acceptance of employment means you also agree to and are bound by the terms of the Halliburton Dispute Resolution Program, effective January 1, 1998.  The Halliburton Dispute Resolution Program binds the employee and the Company to handle workplace problems through a series of measures designed to bring to timely resolution.  This will be true both during your employment and after your employment should you terminate.

Your employment is for no fixed duration. Your employment and compensation can be terminated at any time, with or without cause, and with or without notice, at the option of either Halliburton Energy Services, Inc. or you.  No employee, representative, or agent of Halliburton Energy Services, Inc. can modify this "at-will" relationship either before or after your employment except by a specific, written, employment contract with contrary provisions which is signed by you and the President of Halliburton Energy Services, Inc. Halliburton also reserves the right to change, modify or terminate the terms of any and all of the benefit programs described in this offer of employment, in whole or in part, at any time.

Again, it is my pleasure to confirm the discussed compensation and benefits details regarding your employment on behalf of Halliburton Energy Services, Inc.  We look forward to your acceptance and becoming a member of our organization.

Kind Regards,

*Lori von Heyking*

Lori von Heyking
Sr Director, Human Resources
Completion and Production Division

---

Please print and review this letter, indicate your acceptance status below, sign and return your local HR representative.

_____
Signature of Employee

8-13-12
Date

2



# HALLIBURTON DISPUTE RESOLUTION PROGRAM
## EMPLOYMENT AGREEMENT


Appellate Case: 22-1252    Document: 93-2    Date Filed: 04/21/2025    Page: 22

I have received and read, and fully understand, the Halliburton Dispute Resolution Program brochure, effective January 1, 1998. I understand that by accepting or continuing employment with Halliburton, or any of its subsidiaries, I agree with all provisions established under the Dispute Resolution Program, and any legal dispute between me and my employer will be submitted to the Dispute Resolution Program for final and binding resolution. I will follow all Program requirements and processes to find resolution of any dispute, including claims of discrimination based on race, national origin, gender, religion, age or disability under any federal or state civil rights statute.

My signature below acknowledges my full understanding and agreement to utilize Halliburton's Dispute Resolution Program. Further, I acknowledge that by choosing to comply with this condition of employment, I waive my option to bring a lawsuit against my employer and to a jury trial regarding any dispute, legal or otherwise.

_____
Employee signature

5/13/12
_____
Date

Gary R Wade
_____
(Print or type name)

517690
_____
Employee #

# EXHIBIT B

| | |
|---|---|
| **From:** | Shelfer, Lochlan F. <LShelfer@gibsondunn.com> |
| **Sent:** | Friday, April 18, 2025 5:44 PM |
| **To:** | Austin M. Cohen; McGill, Matthew D. |
| **Cc:** | Kevin D. Benish; Spencer Kontnik; Vincent Levy; Jack L. Millman; Bond, Jonathan C.; Zuckerman, Josh; Fuster, Patrick J.; Heather Crow; sz@kullmanlaw.com |
| **Subject:** | RE: Waetzig: Conferral re Diversity Jurisdiction |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello, Halliburton opposes any amendment of the complaint.

Best,

Lochlan

**Lochlan F. Shelfer**
Of Counsel

T: +1 202.887.3641 | M: +1 917.232.4099
LShelfer@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
1700 M St., N.W., Washington, D.C. 20036-4504

---

**From:** Austin M. Cohen <acohen@kontnikcohen.com>
**Sent:** Thursday, April 17, 2025 6:43 PM
**To:** McGill, Matthew D. <MMcGill@gibsondunn.com>
**Cc:** Kevin D. Benish <KBenish@hsgllp.com>; Spencer Kontnik <skontnik@kontnikcohen.com>; Vincent Levy <vlevy@hsgllp.com>; Jack L. Millman <jmillman@hsgllp.com>; Shelfer, Lochlan F. <LShelfer@gibsondunn.com>; Bond, Jonathan C. <JBond@gibsondunn.com>; Zuckerman, Josh <JZuckerman@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Heather Crow <hfc@kullmanlaw.com>; sz@kullmanlaw.com
**Subject:** Waetzig: Conferral re Diversity Jurisdiction

Mr. McGill,

As you know, the Tenth Circuit ordered supplemental briefing in the *Waetzig* case. Among other things, in our supplemental briefing we intend to assert diversity jurisdiction as a jurisdictional basis, and will seek an amendment to include an amount in controversy. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

Please let us know (1) whether you agree that the amount in controversy in this dispute exceeds $75,000, and (2) whether your client opposes an amendment under 28 U.S.C. § 1653 to specifically allege diversity jurisdiction.

We ask for your response no later than **Monday, April 21, 2025, at 10:00 am MT**.

Best,

Austin M. Cohen, Partner
Kᴏɴᴛɴɪᴋ | Cᴏʜᴇɴ, LLC
201 Steele Street, Ste. 210
Denver, CO 80206
Ph: (720) 449-8448
Fax: (720) 223-7273
www.KontnikCohen.com

NOTICE: This e-mail message is the property of Kontnik | Cohen, LLC. The contents of this message and any attachments are confidential and protected by law under the attorney-client privilege, attorney-work-product doctrine, and/or other applicable privileges. If you are not the intended recipient of this message, please forward a copy to skontnik@kontnikcohen.com and delete the message and its attachments from your computer. Thank you.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---